**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THEREASE ANITA MILES,

      Plaintiff,

v.                          Case No. 3:25-cv-158-MMH-PDB

HON. JOHN AUGUSTINE MORAN,
II, in his official capacity,

      Defendant.

_____

**O R D E R**

**THIS CAUSE** is before the Court on Judge John Augustine Moran, II's

Motion to Dismiss with Prejudice (Doc. 21; Motion), filed October 2, 2025. In the

Motion, Judge Moran seeks dismissal of Therease Anita Miles's Amended

Complaint for Violation of Civil Rights (Doc. 6; Second Amended Complaint),[1]

filed April 16, 2025. In opposition to the Motion, Miles, proceeding pro se, timely

filed her Motion to Deny Dismissal with Prejudice (Doc. 28; Response), filed

October 15, 2025.[2]  Accordingly, the Motion is ripe for review.

---

[1] Although this document is titled "Amended Complaint," it is Miles's Second Amended Complaint. The Court struck Miles's First Amended Complaint (Doc. 2) and directed her to file a second amended complaint, which she did on April 16, 2025. The Second Amended Complaint is the operative complaint.

[2] Although Miles styles this document as a motion, in substance, it is a response to Judge Moran's Motion. Indeed, in it, Miles addresses Judge Moran's arguments for dismissal and explains why she believes they are wrong. See generally Response. Therefore, the Court

## I.   Background[3]

The Court notes that the allegations in the Second Amended Complaint are sometimes difficult to understand and internally contradictory. Despite these issues, the Court attempts to recount Miles's factual allegations as they are presented in the Second Amended Complaint.

On April 14, 2022, Miles initiated a lawsuit against her insurance company, Heritage Property & Casualty (Heritage), for failing to remit funds she believed were owed to her. Second Amended Complaint ¶ 6. A "court document" allowed Miles to pick either an "'[i]n-person' or 'Zoom' trial[,]" and Miles chose the in-person option. Id. ¶ 9. After learning which judge would hear her case, on July 27, 2022, Miles wrote to Judge Moran, explaining her situation. Id. ¶ 11.

Despite her request for an "[i]n-[p]erson trial[,]" Judge Moran's judicial assistant, Ms. Johnson, sent Miles a Notice of Hearing by Zoom (Notice), scheduling a hearing for October 4, 2022. Id. ¶ 12. Reviewing the Notice, Miles believed that another judge's name had been "whited out" and Judge Moran's

---

will treat the document as a response, rather than a motion, and will direct the Clerk of the Court to correct the docket to reflect that the document is a response to the Motion.

[3] In considering a motion to dismiss, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015). As such, the recited facts are drawn from the Second Amended Complaint and may differ from those that ultimately can be proved.

name had been inserted to be the judge for the hearing instead. Id. ¶ 13. According to Miles, "Judge Moran signed his name two spaces above the [s]iganture [l]ine where the original name was whited out[,]" which was "not a normal way" to "sign . . . a legal court document." Id.

The day of the Zoom hearing, Miles asserts Judge Moran was being belligerent because she had asked if another judge could conduct an in-person hearing. Id. She asserts Judge Moran complained that he was not able to see Miles on the screen and could only hear her voice. Id. ¶ 15. Judge Moran failed to note that while Miles was present, Heritage was not. Id. ¶ 16. She complains that Judge Moran did not swear the parties in, id. ¶ 18, call the case, id. ¶ 19, ask the parties to identify themselves, id. ¶ 20, or allow Miles to "state her case[,]" id. ¶ 21. Instead, Judge Moran "did all the talking as a Judge and as the part[ies'] lawyer." Id. ¶ 22. Ultimately, he dismissed the case with prejudice. Id. ¶ 23.

Miles was outraged by the manner in which Judge Moran conducted the hearing. Id. ¶ 24. She filed a complaint with the Judicial Qualifications Commission (JQC), id. ¶ 25, but the JQC dismissed it finding no violation of the Codes of Judicial Conduct, id. ¶ 26.

On January 16, 2024, Miles received a call from the assistant to Judge Rhonda Peoples-Waters, advising her that Judge Peoples-Waters wanted Miles

3

to appear for a hearing regarding her case against Heritage. Id. ¶ 27. Miles was confused by the request but agreed to attend because the assistant assured Miles she would be able to argue her case. Id.

On February 28, 2024, Miles appeared for the second Zoom hearing. Id. ¶ 28. Judge Peoples-Waters called the case with the same case number as the one in her case against Heritage. Id. ¶ 29. She had Miles state her name but did not let her argue her case. Id. Like Judge Moran, Judge Peoples-Waters dismissed Miles's case with prejudice. Id.

The second dismissal of her case infuriated Miles. Id. She contacted the CEO of Zoom to request "a copy" of her hearing before Judge Moran. Id. ¶ 30. According to Miles, a Zoom representative advised that Judge Moran's Zoom hearing "was never activated" by Judge Moran. Id. ¶ 31. In December 2024, Miles filed suit against Judge Moran "for orchestrating a non-existent Zoom" hearing. Id. ¶ 34. Judge Moran "picked Judge Rhonda Peoples-Waters as his lawyer again to hear the case[.]" Id. ¶ 36. Miles moved to disqualify Judge Peoples-Waters, but Judge Peoples-Waters denied the motion and dismissed her lawsuit against Judge Moran with prejudice. Id. ¶¶ 36, 37.

Following the dismissal of her lawsuit against Judge Moran, see id. ¶¶ 37–38, 40, Miles noticed that she was "being stalked and harassed every day around the clock[,]" id. ¶ 39. People have followed her, id. ¶¶ 39, 40–41, 44, 46–

4

47, 50, 52–54, hacked her phone, id. ¶¶ 55–57, damaged her vehicles, id. ¶¶ 42, 47, 50, and destroyed evidence of these incidents, id. ¶¶ 48–50, 53. The people doing these things include employees of Durham Bus Service, id. ¶ 41, attorneys from Boren, Oliver & Coffey, LLP, id. ¶ 50, Publix employees, id. ¶ 51, and courthouse employees, id. ¶ 52.

On February 13, 2025, Miles filed a Complaint for Violation of Civil Rights (Doc. 1; Initial Complaint) in this Court. The next day, she filed another Complaint for Violation of Civil Rights (Doc. 2; First Amended Complaint), filed February 14, 2025. The First Amended Complaint was almost identical to the Initial Complaint, except Miles included an additional basis for jurisdiction, removed some allegations, and omitted the "Injuries" and "Relief" sections. Compare Initial Complaint at 3, 5–8 with First Amended Complaint at 3, 5–6. On February 27, 2025, the Court issued an order (Doc. 4; Order) striking the First Amended Complaint as an impermissible shotgun pleading and ordering Miles to correct the deficient pleading by filing a second amended complaint. See Order at 4–6 (explaining that the First Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[]" and Miles "commits the sin of not separating into a different count each cause of action or claim for relief[]" (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322–23 (11th Cir. 2015))).

5

On April 16, 2025, Miles filed her Second Amended Complaint as directed. In the Second Amended Complaint, Miles contends that Judge Moran is liable under 42 U.S.C. § 1983 for violating her First and Fifth Amendment rights.[4] Id. ¶ 5; Attachment at 3. Although it is difficult to discern the bases of these claims, it appears that they stem from two distinct kinds of conduct: (1) Judge Moran's "belligeren[ce]" when he presided over Miles's lawsuit against Heritage, id. ¶ 14, and (2) "random people" stalking and harassing Miles, id. ¶ 39; see generally id.

---

[4] Miles also completed Pro Se Form 15 and attached it to her Second Amended Complaint. See Doc. 6-1 (Attachment). In the "Basis for Jurisdiction" section, Miles asserts that Judge Moran violated several of her "federal[,] constitutional[,] or statutory right[s,]" including the First Amendment; the Fifth Amendment; 18 U.S.C. §§ 371, 1506, 1621, and 2261A; Florida Statutes sections 784.048(3), 914.22, and 934.03–05; and "C.C.P. § 170.1(a)(1)." Attachment at 3. There are two problems with these assertions. First, Miles attempts to sue Judge Moran under various criminal statutes, including federal and state stalking statutes (18 U.S.C. § 2261A and Fla. Stat. § 784.048); federal conspiracy (18 U.S.C. § 371), theft or alteration of record or process (18 U.S.C. § 1506), and perjury (18 U.S.C. § 1621) statutes; and state tampering (Fla. Stat. § 914.22) and interception of communication (Fla. Stat. §§ 934.03–05) statutes. See Attachment at 3. Although "Congress has given the federal district courts exclusive jurisdiction over 'all offenses against the laws of the United States[,]' . . . this jurisdictional provision does not amount to authorization of a federal private right of action any time a civil plaintiff invokes a federal criminal statute." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1303 (11th Cir. 2008) (quoting 18 U.S.C. § 3231). Therefore, the Court will not consider references to these statutes. Second, by citing "C.C.P. § 170.1(a)(1)[,]" see Attachment at 3, Miles appears to rely on section 170.1(a)(1) of the California Code of Civil Procedure, which disqualifies a judge if he has "personal knowledge of disputed evidentiary facts concerning the proceeding[,]" Cal. Civ. Proc. Code § 170.1(a)(1)(A). However, the California Code of Civil Procedure only applies to lawsuits pending in California courts. See id. § 4 ("The Code establishes the law of this State[.]"). Thus, because Miles initiated her lawsuit against Heritage in a Florida state court, she cannot attempt to enforce California's civil procedure rules against Judge Moran. As a result, the Court will not consider references to this rule either. The only alleged violations of Miles's rights that the Court will consider are the § 1983 claims based on violations of the First and Fifth Amendments.

## II.     Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

7

elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation and quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal[]") (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678–79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed[,]" Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action[,]" Alford v. Consol. Gov't, 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

8

### III.   Discussion

In the Motion, Judge Moran asserts that this action must be dismissed for five reasons: (1) it is "barred by res judicata[,]" (2) "Judge Moran is entitled to absolute judicial immunity[,]" (3) Judge Moran is entitled to "Eleventh Amendment immunity[,]" (4) the "Rooker-Feldman doctrine requires dismissal[,]" (5) the Second Amended Complaint is an impermissible shotgun pleading in violation of Federal Rules of Civil Procedure (Rule(s)) 8 and 10, and (6) Miles "fail[ed] to state a claim." See Motion at 1, 13. In the Response, Miles addresses the res judicata, absolute judicial immunity, Eleventh Amendment immunity, and Rules 8 and 10 arguments. See Response at 12–13. First, Miles questions why she would "need a second case with Judge . . . Peoples-Waters" after Judge Moran "already [d]ismiss[ed] [the case] with [p]rejudice[.]" Id. at 12 (internal quotation omitted). Second, Miles contends that "[i]mmunity does not shield a judge when they are breaking the law[]" and "[s]talking and harassing someone is a criminal act, not a judicial one." Id. Third, she asserts that "[t]he Eleventh Amendment does not stop a federal court from issuing an injunction against a state or federal official who is violating federal laws." Id. Finally, Miles appears to suggest that the Second Amended Complaint does not violate Rules 8 and 10 because she "[a]mended her original complaint so that the [C]ourt [w]ould accept it[,] and the [C]ourt did." Id. at 13.

As mentioned previously, it is difficult to discern the bases of Miles's § 1983 claims. To the extent that her claims are based on Judge Moran's conduct while he presided over Miles's lawsuit against Heritage, they are barred by judicial immunity. And to the extent that they are based on stalking and harassment by "random people[,]" Second Amended Complaint ¶ 39, they are due to be dismissed under Rule 12(b)(6). In any event, the entire Second Amended Complaint is due to be dismissed because it runs afoul of Rules 8 and 10. The Court will discuss each of these reasons for dismissal in turn.[5]

**A. Judicial Immunity**

To the extent that Miles's claims are based on Judge Moran's conduct as the presiding judge in her case against Heritage, the Court addresses the issue of judicial immunity first as it is dispositive. The application of the doctrine of absolute immunity is strictly a question of law for the Court to determine. See Brown v. Crawford Cnty., 960 F.2d 1002, 1012 (11th Cir. 1992). "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" Pierson v. Ray, 386 U.S. 547, 553–54 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). "As early as 1872, the Court recognized that it [is] 'a general principle of the highest importance to the proper

---

[5] Because these three bases for dismissal are sufficient, the Court will not address Judge Moran's other arguments.

administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Stump v. Sparkman, 435 U.S. 349, 355 (1978) (second alteration in original) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)). For these reasons, the Supreme Court has determined that judges cannot be held liable for their judicial acts even if those acts are corrupt, done with malice or in excess of the judges' jurisdiction. Id. at 355–56 (quoting Bradley, 80 U.S. at 351); see also Wahl v. McIver, 773 F.2d 1169, 1172 (11th Cir. 1985). "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." William B. Cashion Nev. Spendthrift Tr. v. Vance, 552 F. App'x 884, 885–86 (11th Cir. 2014) (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000)).[6]

---

[6] The Eleventh Circuit Court of Appeals has recognized that strong public policy arguments support upholding the doctrine of absolute judicial immunity.

> First, and foremost, a judge must be free to act upon his own convictions, without apprehension of personal consequences; second, the controversiality and importance of the competing interests in a case before a court make it likely that the losing party may be overly willing to ascribe malevolent motives to the judge; third, judges faced with the prospect of defending damages actions and, perhaps, satisfying money judgments would be driven to wasteful and destructive self-protection devices and, moreover, may be less inclined to administer justice; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless because judges would constantly be forced to defend their motivations in court.

In <u>Stump</u>, the Supreme Court recognized a two-part test to be used in determining whether a judge is absolutely immune from potential civil liability. See <u>Stump</u>, 435 U.S. at 356–62. The reviewing court must ask whether the judge was acting in a judicial capacity while dealing with the plaintiff, <u>id.</u> at 360, and whether the judge acted in the "clear absence of all jurisdiction[,]" <u>id.</u> at 356–57. Only in circumstances where a judge acted in the "clear absence of all jurisdiction" or dealt with the plaintiff in a non-judicial capacity can the judge face civil liability for actions taken. See <u>id.</u> at 356–57, 360.

In determining whether the judge was acting within his or her judicial capacity, the Eleventh Circuit instructs a court to consider several factors, including: whether "(1) the precise act complained of . . . is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." <u>Harper v. Merckle</u>, 638 F.2d 848, 858 (5th Cir. Unit B Mar. 1981) (quoting <u>McAlester v. Brown</u>, 469 F.2d 1280, 1282 (5th Cir. 1972));[7] <u>see also</u> <u>William B. Cashion Nev. Spendthrift Tr.</u>, 552 F. App'x at 886. Notably, "[a]

<u>Dykes v. Hosemann</u>, 776 F.2d 942, 949 (11th Cir. 1985).

[7] This case, and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

judge is entitled to immunity 'even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.'" William B. Cashion Nev. Spendthrift Tr., 552 F. App'x at 886 (quoting Bolin, 225 F.3d at 1239). Utilizing this framework, the Court will now consider whether Judge Moran would be entitled to immunity from the claims Miles wishes to assert.

Liberally construing Miles's allegations, it is evident that she complains of actions taken by Judge Moran in his judicial capacity. In the Second Amended Complaint, Miles alleges that Judge Moran was "belligerent" at the Zoom hearing, Second Amended Complaint ¶ 14, because he "complained" about not being able to see Miles, id. ¶ 15, did not address Heritage's absence, id. ¶ 16, did not swear in the parties, id. ¶ 18, did not call the case number, id. ¶ 19, did not have the parties state their names for the record, id. ¶ 20, did not allow Miles to state her case, id. ¶ 21, "did all the talking as a [j]udge and as the part[ies'] lawyer[,]" id. ¶ 22, and dismissed the case with prejudice, id. ¶ 23. Presiding over hearings and dismissing cases are normal judicial functions.[8] See Austin v. Mullins, No. 24-13231, 2025 WL 2030051, at *3 (11th Cir. July 21, 2025) (per

---

[8] In the Second Amended Complaint, Miles does not explain why these actions violate her First and Fifth Amendment rights, let alone why they constitute wrongdoing of any kind. See generally Second Amended Complaint. But even if Judge Moran took certain actions at the Zoom hearing in error or out of malice, judicial immunity would still bar Miles from seeking relief against him for those acts. See William B. Cashion Nev. Spendthrift Tr., 552 F. App'x at 886.

curiam);[9] Wilson v. Bush, 196 F. App'x 796, 799 (11th Cir. 2006) (per curiam); Juravin v. Rada, No: 5-24-cv-618-PGB-PRL, 2025 WL 1688251, at *6 (M.D. Fla. May 27, 2025).[10] Although the hearing may not have occured in Judge Moran's chambers, he held it to discuss a case pending before him—Miles's lawsuit against Heritage. See Second Amended Complaint ¶¶ 6, 9, 11–12, 16. And the conduct Miles complains of arose directly out of the virtual interaction with Judge Moran, who was acting in his capacity as presiding judge, about her case. See id. ¶¶ 11, 14–16, 18–23. Therefore, the first part of the Stump test is satisfied.

The Court also considers the second inquiry identified by the Supreme Court in Stump. This question, which focuses on whether the judge acted in the clear absence of all jurisdiction, has been interpreted to preclude immunity in those circumstances "in which a judge acts purely in a private and non-judicial capacity[,]" Henzel v. Gerstein, 608 F.2d 654, 658 (5th Cir. 1979), in a matter "clearly outside the judge's subject matter jurisdiction[,]" Dykes, 776 F.2d at 948.

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[10] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects[]").

14

Miles appears to question Judge Moran's jurisdiction to hold the Zoom hearing by alleging that it looked like Judge Moran "whited out" another judge's signature on the Notice and added his own in an abnormal way. See Second Amended Complaint ¶ 13. And, though it is not entirely clear, it is possible that Miles attempts to contend that the second hearing with Judge Peoples-Waters shows that Judge Moran lacked the authority to hold the first hearing and dismiss the case. See id. ¶ 29.

However, even using the most liberal construction, Miles fails to allege facts giving rise to a plausible inference that Judge Moran acted in the clear absence of all jurisdiction. Indeed, the only concrete allegation that Miles makes—that Judge Moran was assigned to preside over her lawsuit against Heritage—precludes such an inference. See id. ¶ 11 ("Plaintiff found out through the clerk what judge will hear my case so Plaintiff wrote to Defendant on July 27, 2022 explaining my situation[.]"). Moreover, her allegations about the signature on the Notice and the hearing with Judge Peoples-Waters fail to call Judge Moran's jurisdiction into question because they are entirely speculative and ambiguous. See id. ¶¶ 13, 29. Therefore, Judge Moran did not act in the clear absence of all jurisdiction when he held the Zoom hearing and dismissed Miles's case against Heritage.

Because both parts of the Stump inquiry are satisfied, the Court concludes that Judge Moran enjoys absolute judicial immunity from civil liability to Miles based on her claims arising out of Judge Moran's conduct at the Zoom hearing. Accordingly, these claims are due to be dismissed.

## B. Rule 12(b)(6)

Miles also appears to base her §1983 claims on "random people" stalking and harassing her.[11] To the extent that her claims are based on this conduct, they are due to be dismissed under Rule 12(b)(6).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived her of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Moreover, the Eleventh Circuit "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" in §1983 cases. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

---

[11] Although it is not clear, it is possible that Miles did not intend for the stalking and harassment allegations to form the basis of her § 1983 claims. Instead, it seems more likely that Miles included these allegations because she attempted to sue Judge Moran under federal and state criminal statutes. See supra n.4. Indeed, in the Response, Miles says that judicial immunity does not shield Judge Moran from criminal conduct. See Response at 12. However, Miles would still have failed to state a claim because, as the Court explained above, she cannot sue Judge Moran under criminal statutes. See supra n.4.

16

More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556–57 (11th Cir. 1984). As such, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cnty., 577 F. App'x 937, 938 (11th Cir. 2014) (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

Additionally, a civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Indeed, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). To avoid dismissal for failure to state a claim on which relief can be granted, a plaintiff must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "[w]hile

17

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

Here, Miles fails to allege that Judge Moran took any action that deprived her of her First and Fifth Amendment rights. In the Second Amended Complaint, Miles contends that various people stalked her, including employees of Durham Bus Service, Second Amended Complaint ¶ 41, attorneys with Boren, Oliver & Coffey, LLP[,]" id. ¶ 50, Publix employees, id. ¶ 51, and courthouse employees, id. ¶ 52. However, nowhere in the Second Amended Complaint does Miles allege that Judge Moran stalked her, arranged for the other individuals to stalk her, or participated in the stalking and harassment incidents in any way.[12] See generally id.

Moreover, Miles does not explain how these stalking and harassment incidents constitute violations of either her First or Fifth Amendment rights. See generally id. Miles only mentions the First and Fifth Amendments in the "Cause of Action" section of her Second Amended Complaint, id. ¶ 5, and the

---

[12] The Court notes that, in the Response, Miles alleges that Judge Moran "has been having [Miles] stalked and harassed[.]" See Response at 5. She also alleges that Judge Moran is responsible for additional conduct that she did not include in the Second Amended Complaint, such as breaking into her house and stealing pages from her legal documents. See id. at 5–7. However, on a motion to dismiss, the Court's consideration is limited to those facts contained in the complaint and the attached exhibits. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007). "Under Rule 10(c)[,] . . . attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. U.S. Dep't of Just., 758 F.2d 1426, 1430 (11th Cir. 1985); see also Fed. R. Civ. P. 10(c) (stating that the exhibits are part of the pleading "for all purposes"). Therefore, the Court does not consider the additional allegations Miles includes in the Response.

18

"Basis for Jurisdiction" section of the Attachment, Attachment at 3. Throughout the rest of the Second Amended Complaint, Miles merely details the stalking and harassment incidents without connecting them to any particular harm or cause of action. See generally Second Amended Complaint.

Because Miles does not allege a constitutional deprivation, she necessarily fails to allege that any purported deprivation occurred while Judge Moran acted under color of state law. See generally id. Nor does she allege a causal link between any purported deprivation and conduct by Judge Moran. See generally id. Therefore, Miles fails to state a §1983 claim. Accordingly, to the extent that Miles's claims are based on the stalking and harassment incidents, they are also due to be dismissed.

**C. Rules 8 and 10**

The Court notes that Miles's Second Amended Complaint is also due to be dismissed because it constitutes an impermissible shotgun pleading in violation of Rules 8 and 10. While pro se complaints are held to a less stringent standard than those drafted by an attorney, Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), the pro se litigant is still required to "conform to procedural rules[,]" Riley v. Fairbanks Cap. Corp., 222 F. App'x 897, 898 (11th Cir. 2007) (quoting Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002)). The Rules require that a complaint contain "a short and plain statement of the claim showing that the

19

pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Evans v. McClain of Ga., Inc., 131 F.3d 957, 964 n.2 (11th Cir. 1997) (quoting Sams v. United Food & Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989)). Despite the liberal pleading requirements of Rule 8, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis omitted). Rules 8 and 10 work together

> to require the pleader to present h[er] claims discretely and succinctly, so that h[er] adversary can discern what [s]he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir. 1996) (quoting T.D.S., Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1543 (11th Cir. 1985) (Tjoflat, J., dissenting)).

Significantly, a complaint may not run afoul of the Eleventh Circuit's prohibition against shotgun pleading. See generally Weiland, 792 F.3d at

20

1321–23 (outlining four broad categories of impermissible shotgun pleadings).[13] The Eleventh Circuit has unequivocally instructed that shotgun pleadings are "altogether unacceptable." Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997); see also Cook v. Randolph Cnty., 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases). Indeed, the Eleventh Circuit has engaged in "a thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." Weiland, 792 F.3d at 1321; see, e.g., id. at 1321 n.9 (collecting cases). As the court in Cramer recognized, "[s]hotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and

---

[13] In Weiland, the Eleventh Circuit "identified four rough types or categories of shotgun pleadings." See Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting Weiland, 792 F.3d at 1321). As the Barmapov court explained,

> The first [category] is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Id. at 1324–25 (citations omitted) (quoting Weiland, 792 F.3d at 1321–23).

21

resources." <u>Cramer</u>, 117 F.3d at 1263. As such, when faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative and force the plaintiff to replead to the extent possible under Rule 11. <u>See</u> <u>id.</u> (admonishing district court for not striking shotgun complaint on its own initiative); <u>see also</u> <u>Weiland</u>, 792 F.3d at 1321 n.10 ("[W]e have also advised that when a defendant fails to [move for a more definite statement], the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead.").

Miles appears to argue that the Second Amended Complaint should not be dismissed because she corrected the deficiencies identified in the First Amended Complaint in accordance with the Court's Order. <u>See</u> Response at 13. However, the Second Amended Complaint still falls into the second and third categories of shotgun pleadings. <u>See generally</u> Second Amended Complaint; <u>see supra</u> Part I at 5.

The Second Amended Complaint falls into the second category of shotgun pleadings because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." <u>Weiland</u>, 792 F.3d at 1322. In the Second Amended Complaint, Miles vaguely implies wrongdoing by Judge Moran before and during the Zoom hearing without explaining how his conduct violates the law. <u>See</u> Second Amended Complaint ¶¶ 6–37. She also

includes a litany of immaterial facts that obscure any claim she may have arising out of the Zoom hearing. See, e.g., id. ¶¶ 8, 13, 17, 32–33, 35. Moreover, Miles states that she is "being stalked and harassed every day around the clock by random people who she do[es] not know personally[.]" Id. ¶ 39. However, she fails to explain how the stalking and harassment incidents give rise to the § 1983 claims she brings. See generally id. And, significantly, she fails to state, let alone explain how, Judge Moran is responsible for these incidents. See generally id.

Additionally, the Second Amended Complaint falls into the third category of shotgun pleadings because Miles does "not separate[e] into a different count each cause of action or claim for relief." Weiland, 792 F.3d at 1323. In fact, the Second Amended Complaint does not contain any counts. See generally Second Amended Complaint. Instead, Miles merely states that she "brings this action under 42 U.S.C. § 1983, alleging that [Judge Moran], acting under color of state law, violated [Miles's] First Amendment rights[,]" id. ¶ 5, and mentions the Fifth Amendment in the "Basis for Jurisdiction" section of the Attachment, Attachment at 3. Nowhere in the Second Amended Complaint or the Attachment does Miles separate each cause of action into distinct counts and explain which facts support any claim. See generally Second Amended Complaint. This kitchen sink manner of pleading fails to comply with Rules 8

23

and 10 and makes it impossible to discern which causes of action are actually at issue in this particular lawsuit. See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (explaining that a properly drawn complaint "will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading[]" (internal footnote omitted)). Therefore, the Second Amended Complaint is due to be dismissed.

Ordinarily, "a pro se plaintiff must be given at least one chance to amend" a complaint before a district court dismisses it with prejudice. Silberman v. Mia. Dade Transit, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting Woldeab v. Dekalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018)) (alteration adopted). Nevertheless, where an amendment would be futile, a district court may properly dismiss a pro se plaintiff's complaint without an opportunity to amend. See Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Here, the Court already gave Miles a chance to amend the First Amended Complaint when the Court struck it as an impermissible shotgun pleading. See Order at 6. In the Order, the Court explained why the First Amended Complaint

24

was a shotgun pleading and provided Miles with resources to help her draft the Second Amended Complaint. See generally id. Nonetheless, Miles failed to draft a pleading that complied with the Court's Order. See generally Second Amended Complaint. Instead, the Second Amended Complaint suffers from the very same shotgun pleading deficiencies as the First Amended Complaint. Compare id. with First Amended Complaint. Despite the Court's guidance and resources, Miles failed to improve the Second Amended Complaint in even the slightest amount. As a result, the Court concludes that granting her another opportunity to amend would be futile.[14] Therefore, the Second Amended Complaint is due to be dismissed with prejudice as a shotgun pleading.

## IV.    Conclusion

In sum, judicial immunity shields Judge Moran from civil liability for any claims Miles seeks to bring against him due to his conduct at the Zoom hearing. And Miles fails to state a § 1983 claim against him based on the stalking and harassment incidents. Moreover, the Second Amended Complaint constitutes an impermissible shotgun pleading. Therefore, the Second Amended Complaint is due to be dismissed with prejudice.

---

[14] Amendment would also be futile to the extent that Miles bases her claims on Judge Moran's conduct at the Zoom hearing because he is absolutely immune from civil liability for those actions. See supra Part III.A.

25

For the foregoing reasons, it is hereby

**ORDERED**:

1. Defendant's Motion to Dismiss with Prejudice (Doc. 21) is **GRANTED**.

2. This case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court is directed to enter judgment, terminate any pending motions and deadlines as moot, and close the file.

3. The Clerk of the Court is **DIRECTED** to correct the docket to reflect that the Motion to Deny Dismissal with Prejudice (Doc. 28) is a response to Defendant's Motion to Dismiss with Prejudice (Doc. 21).

**DONE AND ORDERED** in Jacksonville, Florida, this 10th day of February, 2026.

MARCIA MORALES HOWARD
United States District Judge

lc36

Copies to:
Counsel of Record
Pro Se Party

26